UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 25-62647-CIV-DIMITROULEAS/HUNT

YANYUN INDUSTRIAL LIMITED,

            Plaintiff,

vs.

UNITED STATES CUSTOMS AND
BORDER PROTECTION, et al.,

            Defendants.
_____/

## REPORT AND RECOMMENDATIONS

This matter is before this Court on Plaintiff Yanyun Industrial Limited's Motion for an *Ex Parte* Restraining Order and/or Injunction to Prevent the Release of Cargo ("Motion"). ECF No. 6. The Honorable William P. Dimitrouleas referred this Motion to the undersigned United States Magistrate Judge. ECF No. 4; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. Upon thorough and careful review of the Motion, the applicable law, argument of counsel at a January 6, 2026 *ex parte* hearing and being otherwise fully advised in the premises, the undersigned RECOMMENDS that the Motion be GRANTED.

## BACKGROUND

The following facts are based on Plaintiff's filings and evidence presented at the hearing. Plaintiff is a Samoan company in the business of importing commodities into the United States. Plaintiff purchased about 135 metric tons of refined white sugar ("the cargo") to sell to one of its clients, non-party Marsons International LLC ("Marsons").

Pursuant to a contractual agreement, Plaintiff bought the cargo from Defendant Optimus Agro Business Ltda, a Brazilian company ("Optimus Brazil"). Defendant

Optimus Agri Agribusiness LLC, a Florida-based company ("Optimus USA"), was identified as an importer for the transaction. Optimus Brazil and Optimus USA (collectively, "the Optimus Defendants") are both owned by Wallace Nunes.

In accordance with the contract, Plaintiff paid about $90,450.00 for the cargo. According to Plaintiff, that amount was inclusive of all costs. In addition to payment terms, the contract stated that a bill of lading[1] would identify the parties as follows: the Seller is Optimus Brazil, the Coseller is Plaintiff, and the Consignee is Marsons.

Non-party Maersk A/S transported the cargo from Brazil to the United States through ocean freight shipping. When the cargo arrived in the United States at Port Everglades, the deal went sour. An issue arose concerning the payment of various fees, including tariffs, customs duties, and freight forwarding costs. At that time, the Optimus Defendants asked Plaintiff for an additional payment of about $32,000 to cover those fees. Plaintiff refused.

Around the same time, a bill of lading was presented to Defendant U.S. Customs and Border Protection ("CBP"). The bill of lading stated that the Shipper is Optimus Brazil, the Consignee is Optimus USA, and the Notify Party is Marsons. Plaintiff was not listed on the bill of lading. Because Marsons was listed as the Notify Party rather than the Consignee, CBP refused to release the cargo to Marsons or Plaintiff. As a result, a dispute arose concerning ownership of the cargo. Currently, the cargo is at a warehouse in the custody of CBP. Storage fees are presently accumulating on the cargo.

---

[1] A bill of lading is a document used in the shipping industry to "'record[] that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.'" *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 94 (2010) (citation omitted).

2

Based on the foregoing, Plaintiff filed the present action. Plaintiff alleges that the Optimus Defendants are liable for breach of contract and fraud. Plaintiff seeks damages, a declaratory judgment, and injunctive relief. Shortly after filing the Complaint, Plaintiff filed the instant Motion pursuant to Fed. R. Civ. P. 65 for entry of an *ex parte* temporary restraining order ("TRO") enjoining CBP from releasing the cargo to any other entity but Plaintiff. ECF No. 6. Plaintiff alleges that the Optimus Defendants are "wrongfully seeking the cargo and keeping it from the Plaintiff." ECF No. 1 at 2. It argues in the Motion that the cargo is presently "in danger of being released to a party other than the Plaintiff as a different party is listed as the consignee on the bill of lading," and that granting an injunction is the only way to prevent that from happening. ECF No. 6 at 1. The undersigned held an *ex parte* hearing on the Motion on January 6, 2026, where one witness testified and Plaintiff submitted several documentary exhibits. The sole witness was Arturo Pertegaz, who is a Commodities Executive for Plaintiff who oversaw some of the transaction between Plaintiff and the Optimus Defendants.

## **LEGAL STANDARD**

"The purpose of a [TRO] . . . is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005), *aff'd*, 403 F.3d 1223 (11th Cir. 2005). To obtain a TRO, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that the TRO is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the TRO would cause the other litigant; and (4) that the TRO would not be averse to the public interest." *Florida Immigrant Coalition v. Uthmeier*, 778 F. Supp. 3d 1315, 1320 (S.D. Fla. 2025) (cleaned

up).  "A TRO is an extraordinary remedy, and is not warranted unless the movant has clearly met the four required elements."  *Mandala v. Tire Stickers LLC*, No. 618CV2110ORL37TBS, 2019 WL 1468530, at *1 (M.D. Fla. Feb. 12, 2019) (cleaned up). "Notably, '[a] showing of irreparable injury is "the sine qua non of injunctive relief."'" *Blaise v. Wells Fargo & Co.*, No. 22-20303-CIV-MARTINEZ-BECERRA, 2022 WL 293259, at *2 (S.D. Fla. Feb. 1, 2022) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

Additionally, the district court may grant an *ex parte* TRO only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  *Martinez Serna v. Bailey Farms S., LLC*, 2:21-CV-237-SPC-MRM, 2021 WL 1060176, at *1 (M.D. Fla. Mar. 19, 2021) (quoting Fed. R. Civ. P. 65(b)(1)).  These requirements acknowledge "that informal notice and a hastily arranged hearing are to be preferred to no notice or hearing at all."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 432 n.7 (1974).

## **DISCUSSION**

Plaintiff's filings and evidence presented at the hearing, including Mr. Pertegaz's testimony, support the following conclusions of law:

1. Plaintiff has a strong likelihood of prevailing at trial on its breach of contract claim.  Plaintiff has demonstrated the existence of a written contract, what appears to be material breaches by the Optimus Defendants, and damages suffered as a result.  *See Wistar v. Raymond James Fin. Services*, Inc., 365 F. Supp. 3d 1266, 1269 (S.D. Fla.

2018) (stating breach of contract elements). Specifically, the Optimus Defendants likely breached the contract by identifying Optimus USA as the Consignee on the bill of lading rather than Marsons. The Optimus Defendants are also likely in breach for "refus[ing] to release the cargo to the Plaintiff or its designated party" despite the fact that Plaintiff has held up its end of the bargain by paying. ECF No. 1 at 3.

    2. Plaintiff has demonstrated that a TRO is necessary to prevent irreparable harm. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Council v. Dep't of Veterans Affs.*, No. 609CV1406ORL35GJK, 2009 WL 10648922, at *1 (M.D. Fla. Oct. 6, 2009) (quoting *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987)). Mr. Pertegaz's testimony established that the potential harm here is "more than monetary." *Gatlin v. ECapital Freight Factoring Corp.*, No. 25-21661-CIV-LETT, 2025 WL 2498037, at *3 (S.D. Fla. Apr. 13, 2025). Mr. Pertegaz testified, essentially, that Plaintiff is not simply seeking to recover its financial investment under the contract. Instead, he testified that Plaintiff already expects to suffer a net loss in this transaction, but that it is pursuing injunctive relief through this lawsuit to protect its reputation as an importing business and to maintain goodwill with its clients by recovering the cargo. Indeed, according to the Complaint, Plaintiff has already "lost business as a result of this situation." ECF No. 1 at 6. Courts have recognized that damage to a company's "business reputation" can be "irreparable harm." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986 (11th Cir. 1995); *see BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) ("Although economic losses alone do not justify a preliminary injunction, 'the loss of customers and goodwill is an irreparable injury.'" (citation omitted)).

Additionally, Plaintiff has alleged and provided testimony that Optimus USA was dissolved and recently reinstated as a company. *See* ECF No. 1 at 2. Based on that, Plaintiff argues that one or both of the Optimus Defendants is a company with "little or no assets," ECF No. 6 at 2, and that those Defendants would not be able to satisfy a simple money judgment. *See Jameson v. Pine Hill Dev., LLC*, No. 07-0111-WSB, 2007 WL 623807, at *5 (S.D. Ala. Feb. 23, 2007) (considering defendant's ability to pay money judgment in irreparable harm analysis).

3. The threat of injury to Plaintiff outweighs any potential harm to Defendants. The requested enjoinment against CBP would merely maintain the status quo. *See Granny Goose*, 415 U.S. at 439; *see also S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1364 (S.D. Fla. 2006) (issuing *ex parte* TRO granting temporary freeze of assets for the purpose of maintaining status quo for at least ten days).

4. Public interest favors enforcing valid contracts. *See San Mar Corp. v. Rough*, No. 8:25-CV-3066-TPB-AEP, 2025 WL 3122867, at *3 (M.D. Fla. Nov. 7, 2025) ("[T]he public interest considerations weigh largely in favor of granting the temporary restraining order by . . . enforcing valid contracts between parties."). Also, Mr. Pertegaz testified to the effect that injunctive relief in this case will help prevent the Optimus Defendants from committing future fraud against other companies in the importing industry. Therefore, the requested TRO will serve the public interest.

5. The Complaint[2] and Motion sufficiently demonstrate "that immediate and

---

[2] The Complaint was inadvertently not titled "Verified Complaint," though it appears to have been verified by Arturo Pertegaz's signed statement. *See* ECF No. 1. Mr. Pertegaz declared under penalty of perjury that the Complaint was true and correct based on the information that was available to him. *See id*. at 8. Indeed, Plaintiff refers back to the filing as "Verified Complaint" in its Motion, ECF No. 6 at 2, suggesting that the omission

6

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *Martinez Serna*, 2021 WL 1060176, at *1. Because Optimus USA is identified as the Consignee on the bill of lading, it may take the cargo at any moment. Through the factual allegations in the Complaint, Plaintiff showed that the Optimus Defendants are actively seeking to take the cargo for their own benefit.

6. "Courts have . . . recognized 'a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Emerging Vision, Inc. v. Glachman*, No. 10-80734-CIV-RYSKAMP/SELTZER, 2010 WL 3293346, at *4 (S.D. Fla. June 29, 2010) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)), *report and recommendation adopted*, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010). To satisfy Fed. R. Civ. P. 65(b)(1)(B), Plaintiff's counsel has represented in the Motion that the goods are in imminent "danger of being released to a party other than the Plaintiff." ECF No. 6 at 1. Based on that, Plaintiff argues that notifying Defendants would lead them to quickly collect the cargo and sell it to a third party, thus rendering this pursuit of injunctive relief pointless. *See id.* at 2. Supporting this assertion is Mr. Pertegaz's testimony that the Optimus Defendants are involved in many lawsuits dealing with similar risks of the seizure and sale of wrongfully taken cargo. *See AT&T Broadband v. Tech Communs., Inc.*, 381 F.3d

---

of the word "Verified" in the title was a scrivener's error. For the purposes of Fed. R. Civ. P. 65, the undersigned finds that the Complaint satisfies the verification requirement. *See Savoia-McHugh v. Glass*, 95 F.4th 1337, 1339 (11th Cir. 2024) ("While [affiants'] declarations are unsworn, they carry the same force as a sworn affidavit under 28 U.S.C. § 1746 because [affiants] signed and dated their documents, and 'declare[d] under penalty of perjury that' their statements '[are] true, correct[,] and made in good faith.'"); *Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because those documents were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit.").

1309, 1319–20 (11th Cir. 2004) (upholding *ex parte* seizure order where plaintiff produced evidence that "defendant[s], or persons involved in similar activities, had . . . concealed evidence or disregarded court orders in the past" (citation omitted)); *see also* ECF No. 6 at 2 (noting that "the shipper . . . is the subject of several lawsuits"). The undersigned thus concludes that *ex parte* issuance is proper in these circumstances.[3]

As all of the requirements to issue a temporary restraining order have been met, the undersigned finds Plaintiff's *ex parte* Motion should be granted as to the requested TRO. For the foregoing reasons, it hereby RECOMMENDED that the Motion be GRANTED to the extent that:

(1) Pursuant to Fed. R. Civ. P. 65(b), upon receipt of the Court's Order on this Report and Recommendation, Defendant U.S. Customs and Border Protection will be enjoined from releasing the disputed cargo to anyone except Plaintiff.

(2) This Temporary Restraining Order remains in effect until the date of the hearing on Plaintiff's request for a preliminary injunction, *see* ECF Nos. 1; 6, or until such further dates as set by the Court or stipulated to by the parties.

(3) By Tuesday, January 20, 2026, Defendants shall file a Response to Plaintiff's request for a preliminary injunction. Plaintiff shall file a Reply by Friday, January 23, 2026. These dates may be revised upon stipulation by the parties and approval of the Court.

(4) By Friday, January 23, 2026, the Parties shall file Witness Lists identifying any witnesses that the parties expect to call at the preliminary injunction hearing. At the option of the parties, direct testimony may be submitted in the form of written affidavits; however,

---

[3] Plaintiff's counsel also represented that there are logistical issues in providing notice and appearances as to the Optimus Defendants because the companies' owner lives in Brazil. *See* ECF No. 6 at 3.

all affiants should be subject to live cross-examination at the hearing.

(5) A preliminary injunction hearing is set in front of United States Magistrate Judge Patrick M. Hunt for **January 27, 2026, at 11:00 a.m.**, in Courtroom 310B of the U.S. Federal Building and Courthouse, 299 East Broward Blvd, Fort Lauderdale, Florida.

(6) Defendants should be notified that if they do not timely respond to Plaintiff's request for a preliminary injunction or appear at the scheduled hearing, the Court may enter a preliminary injunction by default.

Plaintiff shall immediately serve its Motion, ECF No. 6, and this Report and Recommendation on Defendants. Within two (2) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Any response shall be filed within two (2) days of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 7th day of January 2026.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable William P. Dimitrouleas
All counsel of record